William Richard CHAPMAN,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 14–02–00917–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 21, 2004.

Winston E. Cochran, Jr., Houston, for appellant.

Joel H. Bennett, Galveston, for appellee.

Panel consists of Justices FOWLER, EDELMAN, and SEYMORE.

## SUBSTITUTE OPINION

CHARLES W. SEYMORE, Justice.

Appellee's Motion for Rehearing is overruled. Our original opinion issued on August 17, 2004 is withdrawn, and we issue this substitute opinion.

Appellant, William Richard Chapman, Jr., was charged with aggravated sexual assault of K.M.F., his six-year-old stepdaughter. In appellant's first trial, the court *sua sponte* concluded proceedings by announcing a mistrial because the jury was deadlocked. In appellant's second trial, the jury found him guilty and assessed punishment at eighty-eight years' confinement in the Texas Department of Criminal Justice, Institutional Division. In four issues, appellant contends the trial court erred by (1) ordering a mistrial of his first trial, (2) admitting improper outcry testimony regarding the charged offense during the guilt/innocence phase of his second trial, (3) allowing a witness to interpret another person's communication concerning an extraneous offense during the punishment phase of his second trial, and (4) admitting improper outcry testimony regarding the extraneous offense during the punishment phase. We affirm the guilty verdict but reverse and remand for a new trial on punishment.

## I. MISTRIAL

 In his first issue, appellant contends the trial court erred in *sua sponte* ordering a mistrial after the jury deliberated from 6:00 p.m. until midnight on a

Friday night without reaching a verdict.[1] A trial court "may in its discretion discharge [the jury] where it has been kept together for such time as to render it altogether improbable that it can agree." TEX.CODE CRIM. PROC. ANN. art. 36.31 (Vernon 1981); *see Ellis v. State,* 99 S.W.3d 783, 787 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd) (recognizing the length of time the jury may be held for deliberation rests in the trial court's discretion). Whether the trial court abused its discretion in declaring a mistrial is determined by the amount of time the jury deliberates, considered in light of the nature of the case and evidence. *Beeman v. State,* 533 S.W.2d 799, 800–01 (Tex.Crim.App.1976); *Nelson v. State,* 813 S.W.2d 651, 653 (Tex. App.-Houston [14th Dist.] 1991, no pet.).

However, here, appellant does not challenge the length of time the jury deliberated. Instead, he merely complains that the jury deliberated at night. He asserts that it was highly unusual and unfair for the trial court to compel deliberations at night. He also suggests the nighttime deliberations caused the deadlock because the jurors were probably exhausted but might have reached a verdict if they had been allowed to continue deliberating on another day. However, we have found no authority prohibiting deliberations at night. Further, we have found no authority requiring the trial court to consider the time of day that the jury deliberated when de-

ciding whether to order a mistrial. Finally, there is no indication the nighttime deliberations caused the deadlock. To the contrary, as the night progressed, the jury sent various requests to the trial court indicating it was still considering evidence despite the late hour. It was only after the jury twice said it was deadlocked "8–4" that the trial court ordered the mistrial. Accordingly, the trial court did not abuse its discretion in ordering the mistrial. Appellant's first issue is overruled.

## II. OUTCRY TESTIMONY REGARDING CHARGED OFFENSE

 In his second issue, appellant contends the trial court erred in admitting outcry testimony from Clarence Grayson, K.M.F.'s grandfather, and Raytwan Grayson, K.M.F.'s father, regarding the charged offense in the guilt/innocence phase of his second trial. Article 38.072 of the Texas Code of Criminal Procedure created an "outcry exception" to the hearsay rule in prosecutions for sexual offenses committed against a child twelve years of age or younger. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072 (Vernon Supp.2004–05). Article 38.072 provides that outcry testimony from the first adult (other than the defendant) to whom the child made statements describing the alleged offense will not be inadmissible because of the hearsay rule if certain requisites are met.[2] *Id.*

1. The State asserts that appellant waived this complaint by failing to object to the mistrial. *See* TEX.R.APP. P. 33.1(a). However, there is some authority that as long as a defendant does not request or consent to a mistrial based on a deadlocked jury, he does not waive a complaint about the mistrial by failing to object. *See Ex parte Templin,* 945 S.W.2d 254, 257 n. 1 (Tex.App.-San Antonio 1997, pet. ref'd) (citing *Bowles v. State,* 606 S.W.2d 875, 876 (Tex.Crim.App. [Panel Op.] 1980); *Davis v. State,* 144 Tex.Crim. 474, 164 S.W.2d 686, 689 (1942)). Although appellant did not object, there is no indication he requested or

consented to the mistrial. Therefore, we will consider his complaint.

2. The statement is admissible if (1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement notifies the adverse party of its intention to do so, provides the adverse party with the name of the witness through whom it intends to offer the statement, and provides the adverse party with a written summary of the statement; (2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on

The trial court has broad discretion to determine which of several witnesses is an outcry witness, and we will not disturb its decision absent a clear abuse of discretion. *See Garcia v. State,* 792 S.W.2d 88, 92 (Tex.Crim.App.1990); *Hayden v. State,* 928 S.W.2d 229, 231 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). An abuse of discretion will not be found unless the trial court's decision is outside the zone of reasonable disagreement. *See Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App. 2000); *Tear v. State,* 74 S.W.3d 555, 558 (Tex.App.-Dallas 2002, pet. ref'd).

## A. CLARENCE'S TESTIMONY

■ First, appellant contends that the trial court abused its discretion by admitting outcry testimony from Clarence Grayson. Appellant asserts the proper outcry witness was Katina Frank, K.M.F.'s mother, because she was the first person to whom K.M.F. made statements about the offense. We agree.

Before appellant's second trial, the trial court held a hearing at which it considered testimony from Katina and Clarence to determine who was the proper outcry witness.[3] Katina testified that K.M.F. told her about the offense "[p]robably the end of March, beginning of April, but no later than May" of 2001.[4] D.F., K.M.F.'s brother, first told Katina that appellant had been "freaking" K.M.F. Katina then asked K.M.F. about this allegation. K.M.F. said that appellant called her into the "back room" of their home, made her lie on a couch, put lotion on his "private

part," and tried to "stick" his "private part" in her "behind."[5] To Katina's knowledge, she was the first adult to whom K.M.F. reported the offense.

Clarence testified that K.M.F. told him about the offense between April 3 and April 5, 2001. He and Raytwan had taken K.M.F. and D.F. to Kansas City for spring break. During the trip, D.F. repeatedly urged K.M.F. to tell Clarence "what happened." When Clarence asked what they were talking about, D.F. said that appellant had been "freaking" K.M.F.[6] Clarence asked K.M.F. if that was true. She replied, "He's been freaking on me and my sister." Clarence took K.M.F. aside and asked, "Did he uses [sic] his pee pee? The proper word is penis." K.M.F. replied, "He used his penis." Most significantly, Clarence asked why K.M.F. did not tell her mother, and she replied, "I did." Clarence asked when she told her mother. K.M.F. responded either "awhile back" or a "few days ago."

Based on this testimony, the trial court allowed Clarence to be designated as the outcry witness because he could recall a date certain that K.M.F. told him about the offense, while Katina could only say that K.M.F. told her about the offense between March and May of 2001. However, article 38.072 contains no requirement that a witness provide a date certain on which the child reported the offense to qualify as the outcry witness. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072. Rather, article 38.072 allows testimony from the

---

the time, content, and circumstances of the statement; and (3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072 § 2(b).

3. With the parties' consent, the trial court considered the testimony from the outcry hearing before appellant's first trial.

4. The State alleged the offense occurred on or about October 1, 2000.

5. About a week later, K.M.F. added that appellant had put a sock in her mouth.

6. Clarence understood "freaking" to mean sexual intercourse.

*first* adult to whom the child made statements about the offense.[7] *See id.* art. 38.072 § 2(a). Although Katina could not provide a date certain, Clarence's testimony established that Katina was the *first* adult to whom K.M.F. made statements about the offense. Therefore, the trial court's determination that Clarence, not Katina, was the proper outcry witness was outside the zone of reasonable disagreement. *See Weatherred,* 15 S.W.3d at 542; *Tear,* 74 S.W.3d at 558. Accordingly, the trial court abused it discretion in admitting Clarence's outcry testimony.

### B. Harm Analysis

 Having found that the trial court abused its discretion in admitting Clarence's outcry testimony, we must determine whether the error is reversible. *See* Tex.R.App. P. 44.2(b). The admission of inadmissible hearsay constitutes nonconstitutional error, and it will be considered harmless if we, after examining the record as a whole, are reasonably assured that the error did not influence the jury verdict or had but a slight effect. *See id.; Garcia v. State,* 126 S.W.3d 921, 927 (Tex.Crim. App.2004); *Johnson v. State,* 967 S.W.2d

410, 417 (Tex.Crim.App.1998); *Drew v. State,* 76 S.W.3d 436, 459 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd).[8] Likewise, improper admission of evidence is not reversible error if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App. 1991); *Brooks v. State,* 990 S.W.2d 278, 287 (Tex.Crim.App.1999). After examining the record, we are reasonably assured that the improper admission of Clarence's testimony did not influence the jury verdict, or had but a slight effect, because the same or similar evidence was admitted without objection elsewhere at trial.

First, K.M.F. testified without objection regarding the offense. In fact, her account was more detailed than Clarence's testimony.[9] K.M.F. testified that appellant called her into their living room. Pursuant to his instruction, K.M.F. lay face down on the couch. Appellant removed his clothes and pulled down K.M.F.'s shorts. He also held her hands behind her back. He then put his "front part" inside her "bottom part" twice, and it "hurted." However, K.M.F. could not say anything

---

7. The trial court also stressed that the State "chose" Clarence as the outcry witness. Although the State is required to designate an outcry witness as a prerequisite to offering the testimony, the designation does not confer the status of outcry witness. Regardless of the designation, the proffered outcry witness must be the first adult to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072 § 2(a)(2).

8. Citing *Mosley v. State,* 960 S.W.2d 200, 204 (Tex.App.-Corpus Christi 1997, no pet.), appellant contends we should review the trial court's error under the harm analysis applicable to constitutional errors. *See* Tex.R.App. P. 44.2(a). However, other courts have applied the harm analysis applicable to non-constitutional errors. *See Duncan v. State,* 95 S.W.3d 669, 671–72 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (rejecting application of the

constitutional error analysis to improper admission of outcry testimony); *Thomas v. State,* 1 S.W.3d 138, 142 (Tex.App.-Texarkana 1999, pet. ref'd) (same). Because the improper admission of hearsay is non-constitutional error, *see Garcia,* 126 S.W.3d at 927, we also will use the harm analysis applicable to non-constitutional errors. *See Debow v. State,* No. 14–00–00370–CR, 2001 WL 619178, at *1–2 (Tex.App.-Houston [14th Dist.] June 7, 2001, pet. ref'd) (not designated for publication).

9. Clarence's outcry testimony in front of the jury was essentially the same as his testimony during the outcry hearing. In sum, he testified that K.M.F. told him appellant had sexual intercourse with her using his penis, but she did not provide any more details about the offense and did not tell him what part of her body appellant contacted with his penis.

because appellant had placed a sock in her mouth.

Further, Dr. James Lukefahr, a pediatrician at the University of Texas Medical Branch, testified without objection from the report on K.M.F.'s medical examination, and the report was admitted into evidence. The report states, "History per CPS: During Spring Break of 2001, Pt. disclosed to her father and paternal grandfather that her stepfather had been sexually abusing her. The abuse consisted of her stepfather putting 'lotion' on pt's 'butt' and penetrating her anus with his penis. This occurred on more than one occasion."

Although Clarence's outcry testimony was cumulative of other evidence, appellant asserts it improperly influenced the jury verdict because Clarence was the most credible witness at trial and showed by his actions that he believed K.M.F when her testimony was otherwise suspect. However, even if Clarence's testimony regarding the *content* of K.M.F.'s statement had been properly excluded, the jury could still have concluded that Clarence believed K.M.F. because he immediately called Raytwan and made sure appropriate authorities were contacted in reaction to K.M.F.'s statement. Further, Dr. Lukefahr's testimony and report supported K.M.F.'s account of the offense regardless of Clarence's testimony. Therefore, the trial court's error in admitting Clarence's outcry testimony was harmless. *See Duncan v. State*, 95 S.W.3d 669, 672 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant, pediatrician, and medical records); *Poole v. State*, 974 S.W.2d 892, 899 (Tex.App.-Austin 1998, pet. ref'd) (holding any error in admitting mother's outcry testimony was cured by admission of the complainants' testimony).

## C. Raytwan's Testimony

Appellant also contends that the trial court abused its discretion by admitting outcry testimony from Raytwan Grayson because Katina was the proper outcry witness. However, Raytwan did not give outcry testimony because he did not repeat K.M.F.'s statements about the offense. He testified only that he received "alarming news" from K.M.F., she was upset and crying when she told him the "news," and he called Katina, a child abuse hotline, and the police in response. Accordingly, the trial court did not abuse its discretion in admitting Raytwan's testimony. *See Brown v. State*, 756 S.W.2d 793, 797 (Tex. App.-Houston [14th Dist.] 1988, pet. ref'd) (holding aunt's testimony that she was shocked by what child told her was not inadmissible outcry because aunt did not describe abuse); *Turner v. State*, 721 S.W.2d 909, 911 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd, untimely filed) (holding mother's testimony that she called the police after child told her about the "situation" was not inadmissible outcry because she did not repeat child's description of the abuse). Appellant's second issue is overruled.

## III. Outcry Testimony Regarding Extraneous Offense

In his fourth issue, appellant contends the trial court erred by admitting improper outcry testimony from Katina regarding an extraneous offense during the punishment phase of appellant's second trial.

## A. Katina's Testimony

The trial court permitted Katina to testify regarding appellant's alleged sexual

abuse of K.M.F.'s sister, K.F.[10] At the time of trial, K.F. was eleven-years-old. She has cerebral palsy, and except for a few words, she does not speak. Instead, she communicates by nodding and shaking her head in response to "yes" or "no" questions and making other physical gestures. Before the punishment phase, the trial court held a hearing to determine, in part, the admissibility of Katina's proffered outcry testimony. The trial court ruled Katina could give limited outcry testimony regarding K.F.'s nodding her head in response to certain questions.[11] In front of the jury, Katina testified that she asked K.F. if appellant did "anything to her in a sexual way," and K.F. nodded "yes."

Appellant contends Katina's testimony was inadmissible because K.F.'s "statement" regarding the "offense" was not sufficiently specific to satisfy the outcry exception.[12] We agree. The outcry exception applies "only to statements that *describe* the alleged offense." Tex.Code Crim. Proc. Ann. art. 38.072 § 2(a) (emphasis added). To constitute admissible outcry, the statement "must be more than words which give a general allusion that something in the area of child abuse was going on." *Garcia*, 792 S.W.2d at 91; *see Hayden*, 928 S.W.2d at 231. Rather, the statement must describe the offense in some discernible manner. *Garcia*, 792 S.W.2d at 91; *Hayden*, 928 S.W.2d at 231.[13]

**10.** Because they have the same initials, we will refer to the sister as K.F., while the complainant is K.M.F.

**11.** At the hearing, Katina testified she had previously asked K.F. if appellant did anything to her in a sexual manner, and K.F. nodded "yes." When Katina asked what appellant did, K.F. grabbed her vagina and pointed to her "backside." Based on its observations of K.F., the trial court concluded she was incapable of grabbing and pointing to the extent described, so Katina's testimony regarding those gestures was not credible. Therefore, the trial court allowed Katina to testify regarding K.F.'s nodding her head in response to Katina's questions, but not K.F.'s other gestures.

**12.** The State contends appellant did not preserve error on this complaint because he did not object when Katina testified in front of the jury. However, appellant objected to Katina's testimony at a hearing outside the jury's presence; therefore, he was not required to object again when Katina testified before the jury. *See* Tex R. Evid 103(a)(1); *Geuder v. State*, 115 S.W.3d 11, 13–14 (Tex.Crim.App.2003); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim.App.2003); *Robinson v. State*, 985 S.W.2d 584, 586 (Tex.App.-Texarkana 1998, pet. ref'd). The State also asserts that appellant did not preserve error because his objection at the hearing outside the jury's presence did not match his complaint on appeal.

However, appellant's "hearsay" objection was sufficient to preserve his complaint that Katina's testimony did not satisfy the outcry exception. *See Long v. State*, 800 S.W.2d 545, 546–48 (Tex.Crim.App.1990); *see also Lankston v. State*, 827 S.W.2d 907, 911 (Tex.Crim. App.1992); *Beckley v. State*, 827 S.W.2d 74, 78 (Tex.App.-Fort Worth 1992, no pet.). Nonetheless, appellant did sufficiently object on the same grounds raised on appeal; in addition to his hearsay objection, appellant objected that Katina's testimony was not proper outcry because she could not get any meaningful information about "where or when or exactly what." *See Ex parte Little*, 887 S.W.2d 62, 65 (Tex.Crim.App.1994) (stating objection may be phrased in any manner which sufficiently apprises trial court and opposing counsel of nature of the complaint). Therefore, we will consider his complaint.

**13.** We note the outcry exception does not ordinarily apply to hearsay statements regarding an extraneous offense. By its own terms, article 38.072 applies "only to statements that describe the *alleged* offense." Tex.Code Crim. Proc. Ann. art. 38.072 § 2(a) (emphasis added); *see Beckley v. State*, 827 S.W.2d at 78 (recognizing outcry exception statute does not extend to a child's outcry respecting an extraneous offense); *see also Howard v. State*, No. 14–99–01004–CR, 2003 WL 21195473, at *3 (Tex.App.-Houston [14th Dist.] May 22, 2003, pet ref'd) (not designated for publication)

■ Katina's testimony that K.F. nodded "yes" when asked if appellant did "anything to her in a sexual way" is nothing more than a general allusion to abuse. See Garcia, 792 S.W.2d at 91; Hayden, 928 S.W.2d at 231. The term "sexual way" could have vastly different meanings to different persons. See Garcia, 792 S.W.2d at 91 (recognizing in the context of outcry statements, "generalities can be misleading"). The term does not necessarily even encompass a criminal offense.[14] It is certainly unclear what Katina meant by "sexual way." The lack of specificity is exacerbated by the fact that K.F. is a child, has an I.Q. in the 60's, and was found incompetent to testify. Because the meaning of "sexual way" is unclear to us, we doubt K.F. understood what she was answering when she nodded "yes" to Katina's question. We recognize outcry statements may be admissible despite the unsophisticated language used as long as the offense was described in some discernible manner. See, e.g., Rodriguez v. State, 997 S.W.2d 640, 642 (Tex.App.-Corpus Christi 1999, no pet.) (finding social worker's outcry testimony was proper where child told social worker that defendant put his "private part" into her "private part"); Rainey v. State, 763 S.W.2d 470, 471–73 (Tex.App.-Houston [14th Dist.] 1988, no pet.) (holding mother was proper outcry witness where child told mother that defendant "put his thing in [her]"). However, here, no offense was described at all, much less in any discernible manner.

Accordingly, K.F.'s "statement" did not satisfy the outcry exception, and the trial court abused its discretion by admitting Katina's outcry testimony. See Smith v. State, 131 S.W.3d 928, 931 (Tex.App.-Eastland 2004, pet. ref'd) (affirming that child's statement to his mother that "[defendant] had been performing oral sex" on him was nothing more than a general allusion to sexual abuse because child did not relay any specific details about the offense); Bradshaw v. State, 65 S.W.3d 232, 239–40 (Tex.App.-Waco 2001, no pet.) (determining mother was not outcry witness where child told mother defendant "had been touching her" but offered no details; however, aunt was outcry witness because she asked child where the touching had occurred, and child pointed to the area between her legs and said defendant put his finger inside her); see also Bui v. State, No. 05–96–00901–CR, 1998 WL 420303, at *3–4 (Tex.App.-Dallas July 28, 1998, pet. ref'd) (not designated for publication) (finding no abuse of discretion in trial court's determining that child's statement to aunt that defendant "had sex with me" was general allusion to abuse; however, child's statement to cousin that appellant took her in the bedroom, took her clothes off, put his "private" into her "private," and a few minutes later he took it out and some "white stuff" came out was proper outcry).

### B. HARM ANALYSIS

■ Having found that the trial court abused its discretion by admitting Katina's

---

(same). However, on appeal, appellant does not challenge the admissibility of outcry testimony regarding an extraneous offense in general. Instead, he asserts this particular outcry testimony was inadmissible based on its content.

**14.** In its notice of intent to introduce extraneous offenses, the State asserted it intended to introduce evidence of "aggravated sexual as-

sault" of K.F. The term "sexual way" is too general to describe any prohibited conduct, much less aggravated sexual assault. See TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2004–05) (requiring actor's mouth, anus, or sexual organ to contact or penetrate the mouth, anus, or sexual organ, of the child, or vice-versa, to constitute aggravated sexual assault).

outcry testimony, we must determine whether the error is reversible. *See* TEX. R.APP. P. 44.2(b). After examining the record as a whole, we are *not* reasonably assured the error did not influence the jury verdict at the punishment phase or had but a slight effect. *See id.; Garcia,* 126 S.W.3d at 927; *Johnson,* 967 S.W.2d at 417; *Drew,* 76 S.W.3d at 459.

Katina's testimony was not cumulative of other evidence. The trial court precluded any mention of sexual abuse of K.F. during the guilt/innocence phase. The State's only other witness at the punishment phase was Joy Blackmon, a physician's assistant at the University of Texas Medical Branch, who examined K.F. Blackmon testified that K.F.'s genital examination revealed "generalized narrowing" of the hymen which is "consistent with past penetrating injury." However, pursuant to appellant's hearsay objection, Blackmon was not allowed to testify regarding the identity of the abuser, and her medical report was redacted to the extent it identified appellant as the abuser. As a result, Katina's testimony was the only evidence that *appellant,* if anyone, sexually abused K.F.[15] Therefore, if Katina's testimony had been properly excluded, the jury could not have concluded beyond a reasonable doubt that appellant sexually abused K.F.[16] In contrast, because Katina's testimony was admitted, the jury may have considered it together with the medical evidence and concluded beyond a reasonable doubt that appellant sexually abused K.F.[17] *See Motilla v. State,* 78 S.W.3d 352, 355 (Tex.Crim.App.2002) (recognizing appellate court conducting harm analysis should consider, among other items, how the error might have been considered in connection with other evidence).

Any such conclusion may have influenced the jury in assessing appellant's punishment. The State's main purpose during the punishment phase was to prove appellant also abused K.F., and, thus, maximize his sentence.[18] The State emphasized this abuse during closing argument:

> [W]hat comes to mind when I think about [appellant], a program I saw on Discovery Channel where you have lions going after gazelles. And as much respect as I have for lions, kings of the jungle, I would have to compare them to the sex offender. Where do the lions go after a prey? Do they go after the biggest, fastest possible gazelle? No. They go after the weak, the smaller one, the one left behind, the easy prey. And that's what he did. He went after a six year-old [K.M.F.], analy raped her, and

---

15. Appellant introduced evidence that some experts now consider Blackmon's finding, traditionally associated with physical abuse, to be a normal variation in girls who have not been sexually abused. Regardless of any conflicting medical evidence, Katina's testimony was the only evidence that *appellant* may have sexually abused K.F.

16. The jury was properly instructed that it could not consider evidence of an extraneous offense in assessing punishment unless it found beyond a reasonable doubt that appellant committed the offense. *See* TEX.CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1) (Vernon Supp.2004–05); *Fields v. State,* 1 S.W.3d 687, 688 (Tex.Crim.App.1999).

17. Further, the generality of Katina's testimony allowed the jury to interpret the meaning of "sexual way." Considering the medical evidence, the jury may have given "sexual way" its most drastic meaning as urged by the State and concluded that appellant "vaginally raped" K.F.

18. Although the State introduced appellant's past convictions for forgery of a commercial instrument, theft, and public intoxication, none of these offenses rose to the level of a sexual offense against a child.

then went after her sister [K.F.] and vaginally raped her.

The State further argued, "You are the ones to determine what happens to [appellant], a sex offender. Two victims. Two of his step-children ... He was raping them." *See Motilla*, 78 S.W.3d at 355–56 (recognizing appellate court conducting harm analysis may consider, among other items, closing arguments and whether the State emphasized error).

The range of punishment for the charged offense was five years to ninety-nine years or life. *See* TEX. PEN.CODE ANN. § 12.32 (Vernon 2003). Appellant's sentence of eighty-eight years was near the maximum. While the jury may have considered a harsh sentence appropriate for aggravated sexual assault of K.M.F., we cannot say the assertion that appellant is a multiple sex offender who also assaulted a child with cerebral palsy did not influence the sentence.[19] Therefore, the error in admitting Katina's outcry testimony was harmful. *See James v. State*, 47 S.W.3d 710, 713–15 (Tex.App.-Texarkana 2001, no pet.) (holding that in defendant's trial for aggravated sexual assault of child, improper admission of evidence he engaged in sexual acts with other persons when they were children likely had substantial and injurious effect on jury's punishment verdict because it showed continuing pattern of child abuse by defendant over a period of decades); *see also Aleman v. State*, 49 S.W.3d 92, 96 (Tex.App.-Beaumont 2001, no pet.) (finding no fair assurance improper admission of DWI convictions did not influence jury's punishment verdict; although convictions were not the only evidence admitted in punishment phase, prosecutor relied on them to urge maximum sentence, and jury imposed maximum sentence).[20] Appellant's fourth issue is sustained.[21]

Accordingly, we affirm the guilty verdict but reverse appellant's sentence and remand for a new trial on punishment.

---

**19.** During deliberations, the jury asked to see K.F.'s medical report indicating it was considering the alleged abuse of K.F. in determining punishment.

**20.** *Cf. Brooks v. State*, 76 S.W.3d 426, 435–36 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (holding State's failure to give notice of intent to use unadjudicated extraneous offenses in punishment phase of defendant's trial for cocaine possession was harmless; trial court stated its punishment determination would not be based on any unadjudicated offense, defendant had previous final conviction for cocaine possession, and trial court imposed sentence lower than State requested.); *Hicks v. State*, 901 S.W.2d 614, 617–18 (Tex.App.-San Antonio 1995, pet. ref'd) (finding remarks by witness and trial judge regarding extraneous offenses did not prejudicially influence jury's decision to assess eighty years' sentence for aggravated sexual assault where it heard evidence of defendant's previous convictions for aggravated sexual assault, robbery, statutory rape, and burglary).

**21.** In his third issue, appellant also contends Katina's testimony regarding the extraneous offense was improper because she was allowed to interpret K.F.'s gestures. Based on our disposition of appellant's fourth issue, we need not address his third issue.