Affirmed and Memorandum Opinion filed November 3, 2005









Affirmed
and Memorandum Opinion filed November 3, 2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00339-CR

NO.
14-04-00340-CR

NO.
14-04-00341-CR

____________

 

ELOY REDD, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 268th
District Court

Fort Bend County, Texas

Trial Court Cause No. 36,031B,
38,696 & 38,697

 



 

M E M O R A N D U M   O P I
N I O N

The State charged appellant, in three
separate indictments, with aggravated sexual assault of a child.  Appellant was sentenced to three forty-year
terms of imprisonment, to run concurrently, in addition to a $10,000 fine for
each offense.  On appeal, appellant challenges
the factual sufficiency of the evidence to support his conviction and the trial
court=s denial of his
motion for mistrial after the jury indicated, for the second time, that it had
been unable to reach a decision on punishment. 
We affirm.








 

Background

Because we detail the evidence and
procedural events extensively in our analysis, we address them only briefly
here.  We refer to the complainant in
this case as M.R.  At the time of
appellant=s assaults, M.R. was in the seventh grade
and living with her maternal aunt. 
Because she lived with her maternal aunt, M.R. frequently referred to
her aunt as her mother, while referring to her biological mother as her aunt.[1]
M.R.=s aunt told school
authorities that M.R. lived with her mother, so that M.R. could attend school
in that school district.   After school,
M.R. would go to her mother=s home.  At the time of the assaults, appellant and
M.R.=s mother were
married and shared a home.

The State charged appellant with causing
his sexual organ to penetrate M.R.=s sexual organ,
anus, and mouth.  A jury convicted
appellant of all three offenses.  After
finding appellant guilty of these offenses, the jury began its punishment
deliberations.  The jury twice sent the
trial judge notes indicating it had not reached a consensus.  Each time, the trial court denied appellant=s request for a
mistrial, and instructed the jury to continue deliberating.  At the conclusion of deliberations, the jury
assessed punishment at forty  years= confinement and a
$10,000 fine for each of the three offenses.

Appellant raises two issues on
appeal.  In the first, he challenges the
factual sufficiency of the evidence to support his conviction.  Specifically, appellant asserts the evidence
does not support a finding that he was the person who sexually assaulted M.R.  In the second, appellant contends that the
trial court erred by denying his motion for a mistrial during the jury=s punishment phase
deliberations.  Appellant contends that
the trial court abused its discretion by denying his motion for mistrial after
the jury indicated, for the second time, that it was deadlocked.  








Analysis

1.       The
evidence supports a finding that appellant committed aggravated sexual assault
upon M.R.

A.      Standard
of Review

Appellant challenges only the factual
sufficiency of the evidence to support his conviction.  Specifically, he contends the State failed to
prove he was the person who sexually assaulted M.R.  We employ familiar standards of review to
analyze appellant=s factual sufficiency challenge: reviewing
all of the evidence to determine whether the jury was Arationally
justified in finding guilt beyond a reasonable doubt.@  Zuniga v. State, 144 S.W.3d 477, 484
(Tex. Crim. App. 2004).  We view the
evidence in a neutral light, without the prism of the light most favorable to
the verdict.  Id. at 481.  The evidence may be factually insufficient in
two ways: (1) though legally sufficient, it may be too weak to support a
finding of guilt beyond a reasonable doubt; and (2) when balanced against the
evidence supporting the verdict, the contrary evidence may be so strong that
the beyond-a-reasonable-doubt standard could not have been met.  Id. at 484B85.  As an appellate court, we defer to the jury=s role as
factfinder, particularly in areas of witness credibility, demeanor, and the
weight to be given conflicting testimony. 
Id. at 481 (ADeference is given
to the jury verdict, as well as to determinations involving the credibility and
demeanor of witnesses.@).  

B.      Evidence Supporting the Verdict








Appellant first attacks the factual
sufficiency of the evidence by arguing that the evidence supporting the verdict
is not strong enough to prove his guilt beyond a reasonable doubt.  Appellant contends the prosecution=s case was Abased almost
entirely on the complainant=s testimony.@ Appellant
concedes that one witness=s testimony is normally sufficient to
support the verdict, but argues that, in this case, it is not sufficient
because M.R.=s testimony Asuffered from
serious flaws.@ 
According to appellant, M.R.=s testimony is
flawed because she initially denied that she was assaulted by appellant, and
because her testimony at trial was inconsistent with some of her previous
statements during the investigation.  We
now examine the evidence that supports the jury=s verdict.

Authorities learned of the assaults when
M.R. told her teacher she could not sit down because Aher bottom hurt,@ and this was not
because of a spanking.  M.R. later made
additional statements to school officials, including the school nurse and
assistant principal.

The staff at M.R.=s school,
concerned about the possibility of sexual abuse, contacted their local law
enforcement officials.  However, because
of the initial confusion surrounding where M.R. lived, and where the assaults
took place, both Harris and Fort Bend counties were involved in the
investigation.  In the course of their
investigations, both counties interviewed M.R. numerous times, two of which
were videotaped.  As part of the
investigation, M.R. also gave a written statement and  received a medical examination.  

Initially, M.R. was reluctant to discuss
what had happened to her.  For example,
when the school nurse asked M.R. if someone had touched her, she responded that
she could not answer because her uncle would be mad and had instructed her not
to answer any questions.  Although
appellant was actually M.R.=s stepfather, she
frequently referred to him as her uncle. 
Also, during her first taped interview, M.R. repeatedly stated that she
could not talk about what had happened to her. 
She then made several statements indicating Anothing happened@ to her.

At trial, M.R.=s counselor
testified that, during a session, M.R. explained that she had not been
forthcoming during the initial investigations because she was Afearful due to the
threats [appellant] had made to her.@  M.R. testified that appellant had threatened
to kill her, her grandmother, and her aunt if she revealed what he had done to
her.  She also testified that she did not
want anyone to know what he was doing to her because Ahe threatened me
and I was scared.@  A
detective with experience investigating cases of sexual abuse testified that it
is sometimes Avery hard for a child to disclose,
especially sexual abuse.@








Despite her initial fears, M.R. eventually
revealed that appellant had sexually assaulted her on numerous occasions.  At school, M.R. spoke with her assistant
principal.  During the course of this
conversation, the assistant principal gave M.R. paper to write on, and told her
that, if she liked, she could shred the paper or scratch out what she
wrote.  M.R. drew a picture of a girl and
a man in what appeared to be a sexual act. 
M.R. wrote her own name next to the girl, and Astranger@ next to the
man.  When her principal asked M.R. who
the Astranger@ was, she wrote ARedd.@  She later crossed out ARedd@ and Astranger.@  During her second videotaped interview, M.R.
told law enforcement officials that appellant had raped her.[2]

At trial, when asked what had been going
on that she had not wanted to talk about, M.R. stated that ARedd was doing
something.@ 
And when asked who she was referring to, M.R. responded AEloy.@  She then identified appellant as Eloy Redd.

In addition to identifying appellant in
court, M.R. described several incidents when appellant sexually assaulted
her.  M.R. recounted that appellant raped
her repeatedly, both anally[3]
and vaginally,[4]
and forced her to perform oral sex on him.[5]  M.R.=s medical
examination, which revealed evidence of penetration, corroborated her account.








We have reviewed the entire record.  Appellant correctly asserts that M.R.
initially denied that any sexual assault occurred, and denied that appellant
committed the sexual assaults.  However,
M.R. later provided an explanation to the jury for her earlier statements,
which her counselor testified was common to victims of sexual assault.  The medical evidence corroborated her
account.  The jury was free to consider
the inconsistencies in M.R.=s testimony and to
evaluate her credibility accordingly.  See
Johnson v. State, 23 S.W.3d 1, 8 (Tex. Crim. App. 2000)(en banc) (AUnless the
available record clearly reveals a different result is appropriate, an
appellate court must defer to the jury=s determination
concerning what weight to give contradictory testimonial evidence because
resolution often turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@).  We conclude that M.R.=s testimony,
coupled with the testimony from the other witnesses and the medical evidence,
is factually sufficient to support appellant=s conviction.  See Zuniga, 144 S.W.3d at 484.

C.      Evidence
Contrary to the Verdict

In his second attack on the factual
sufficiency of the evidence, appellant argues that the contrary evidence is so
strong that the beyond-a-reasonable-doubt standard could not have been
met.  In this challenge, appellant argues
that the evidence shows he denied sexually abusing M.R., and that other family
members had both histories of sexually abusive behavior and an opportunity to
commit the crimes alleged. 

Against his counsel=s advice,
appellant testified on his own behalf. 
While appellant conceded that he believed M.R. was sexually assaulted,
he denied being the person who committed those assaults.  Appellant also testified that, during the
relevant time periods, he was not alone with M.R.  During his testimony, appellant also raised
the possibility that one of M.R.=s other relatives
had committed the sexual assaults.








The jury was free to accept or reject
appellant=s own testimony that he did not commit the
offenses against M.R.  See Johnson,
23 S.W.3d at 8.  In evaluating the
credibility of his denial, the jury may have considered appellant=s prior
convictions for felony theft and solicitation of prostitution.  They also may have considered his contentionCthat he was never
alone with M.R. and thus had no opportunity to commit the offensesCimplausible in
light of the length of time that M.R. spent at his home.

The jury also was free to reject appellant=s contention that
another relative committed these offenses. 
We distinguish this case from Ward v. State, 48 S.W.3d 383 (Tex. App.CWaco 2001, pet ref=d), upon which
appellant relies.  In that case, the jury
found that Ward committed a robbery. 
Four of Ward=s fellow employees testified that he was
working on the day of the robbery.  Time
cards corroborated their testimony.  Two
of the eyewitnesses who identified Ward as the robber saw the perpetrator for
only a brief period of time.  The third
eyewitness was under medication for a mental condition.  Another eyewitness identified another
man.  In that case, the court found the
evidence factually insufficient to support a guilty verdict.  Id. at 391. Unlike Ward, M.R.
knew her assailant and had ample opportunities to recognize appellant.  Also, unlike Ward, in which
documentary evidence and an eyewitness corroborated Ward=s alibi theory,
the only contrary evidence in this case is appellant=s own testimony.  As an appellate court, we cannot reverse
simply because the jury rejected appellant=s alternate
theory.  See Goodman v. State, 66
S.W.3d 283, 287 (Tex. Crim. App. 2003) (en banc) (ABut it is a jury,
not a reviewing court, that accepts or rejects reasonably equal competing
theories . . . .@).

Again, we have reviewed the entire
record.  Based upon this record, we
cannot say that the contrary evidence is so overwhelming that the
beyond-a-reasonable-doubt standard could not have been met.  See Zuniga, 144 S.W.3d at 484B85.  We overrule appellant=s challenge to the
factual sufficiency of the evidence to support his conviction.

 

 

 

 








2.       The
trial court did not abuse its discretion by denying appellant=s motions for
mistrial.

In his second point of error, appellant
contends that the trial court erred by denying his motion for a mistrial.  Although he moved for a mistrial twice,
appellant complains only of the trial court=s denial of his
second motion for a mistrial.[6]  

After finding appellant guilty of the
three offenses described above, the jury began its punishment
deliberations.  After deliberating for
almost nine hours, the jury sent a note to the trial court at 10:05 p.m.  The note read:

We are at the same
point as we were after 2 hours.  No one
has changed their minds.  We have tried
everything to no avail.  Is there
anything that you can do to help us?

The trial court recessed the jury until the following
morning, and denied appellant=s motion for a
mistrial.

The following day, the jury deliberated
for nearly seven more hours before sending a second note to the trial
court.  This note read:

We are still 11 to
1.  We have tried to lay out the
charges.  Attempted compromise and every
angle 11 people can come up with.  The 1
will not budge.  The 1 refuses to
compromise in any way.   Please help us?

The trial court brought the jury into the courtroom
and gave them an Allen charge, instructing them that their failure to
reach a decision would result in a re-trial of the case. Again, appellant moved
for a mistrial, and the trial court denied his request.








 The
jury resumed deliberating and returned a decision about three hours later.  The jury assessed appellant=s punishment at a
$10,000 fine and forty years= imprisonment for
each offense.  

Article 36.31 of the Texas Code of
Criminal Procedure allows a trial court to discharge a jury when Ait has been kept
together for such time as to render it altogether improbable that it can agree.@  Tex.
Code Crim. Proc. art. 36.31. 
Therefore, the length of time that a trial court may hold the jury for
deliberations lies within the trial court=s discretion.  Montoya v. State, 810 S.W.2d 160, 166
(Tex. Crim. App. 1989 en banc); Chapman v. State, 150 S.W.3d 809, 812
(Tex. App.CHouston [14th Dist.] 2004, pet. ref=d)  (stating abuse-of-discretion standard applies
to trial court=s decision to discharge the jury).  AThe trial court is
not bound to declare mistrial at the first sign of jury impasse.@  Howard v. State, 941 S.W.2d 102, 121
(Tex. Crim. App. 1996)(en banc). 
Instead, to determine whether the trial court abused its discretion, we
must consider the length of the trial and the volume of evidence submitted to
the jury.  Jackson v. State, 17
S.W.3d 664, 676 (Tex. Crim. App. 2000) (citing Howard, 941 S.W.2d at
121); Chapman, 150 S.W.3d at 812. 


In this case, the jury was required to
assess punishment for three different offenses. 
Each offense carried a punishment range that included, at most, life
imprisonment and a fine of $10,000. 
During the punishment phase, the defense called nine of appellant=s family members
and friends to testify.  Each witness
testified about their relationship with appellant and his reputation or
character.  Additionally, the defense recalled
two of appellant=s sisters to testify about appellant=s mood and their
ability to visit him since the jury=s guilty
verdicts.  Although the prosecution did
not call any additional witnesses, it did re-offer all of the evidence
introduced during the guilt/innocence phase of appellant=s trial.  Over appellant=s objection, the
trial court admitted this evidence. 








At the time of appellant=s second motion
for mistrial, the jury had been deliberating for approximately fifteen
hours.  The jury foreman had sent two
notes asking the trial court for help. 
In response, the trial court gave an Allen charge to encourage
the jurors to reach an agreement on appellant=s punishment. 

We conclude that the trial court was
within its discretion in determining that it was not improbable that the jury
could reach a verdict.  See Tex. Code Crim. Proc. art. 36.31.  We overrule appellant=s second point of
error.

Conclusion

The evidence was factually sufficient to
support appellant=s conviction, and the trial court did not
err by denying appellant=s motion for a mistrial.  We affirm the judgment of the trial court.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment
rendered and Memorandum Opinion filed November 3, 2005.

Panel
consists of Justices Fowler, Edelman and Guzman.

Do
Not Publish C Tex.
R. App. P. 47.2(b).

 

 











[1]  To avoid
confusion, we refer to M.R.=s biological mother as her mother and her biological
aunt as her aunt.





[2]  The jury
viewed this videotape, as well as another videotaped interview of M.R.





[3]  During her
direct examination, M.R. testified that appellant came into the living room
while she was watching television, held a knife to her throat, and told her to
be still.  Fearful, M.R. remained still
while appellant removed his own clothes, and put his penis in her anus.  M.R. testified that this was painful, and
that she cried.  On another occasion,
appellant told M.R. to get into his shower. 
Once inside the shower, appellant forced his penis into her anus.  





[4]  Also during
her direct examination, M.R. testified that, while she was cooking eggs in the
kitchen, appellant grabbed her by the wrist and dragged her to his
bedroom.  He then placed her on the bed
and put a pillow over her face when she screamed.  With the pillow over her head, M.R. felt
appellant put his penis inside her vagina. 
Again, appellant testified that it hurt. 






[5]  M.R. testified
that appellant forced her to perform oral sex on him numerous times.  





[6]  Specifically,
appellant states: A[T]he jury had been deliberating some fifteen hours
when they informed the trial judge, not for the first, but for the second time,
that they were deadlocked . . . . the trial judge abused his discretion in
denying Appellant=s motion for a 
mistrial.@  We interpret
his briefing to challenge only the denial of his second motion for
mistrial.  Appellant also does not
contend that the court=s Allen charge was coercive on its face, or
that jury misconduct actually occurred. 
Therefore, we do not address these issues.