**Affirmed as Reformed and Memorandum Opinion filed September 10, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00653-CR

---

## BENNETT KEITH O'BANNON, Appellant,

## V.

## THE STATE OF TEXAS, Appellee.

---

**On Appeal from the 337th District Court**
**Harris County**
**Trial Court Cause No. 1310491**

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Bennett Keith O'Bannon guilty of indecency with a child, and the trial judge assessed punishment at thirty-two years in the penitentiary. On appeal, O'Bannon contends that the trial court reversibly erred in allowing the State to present testimony from two outcry witnesses regarding the same alleged conduct, and that the judgment is invalid because it contains erroneous court costs. O'Bannon further contends the trial court erred in failing to

hold a hearing on his motion for new trial. We reform the trial court's judgment to delete the specific amount of costs assessed and correct the jail-time credit. As reformed, we affirm the judgment.

I

In April 2011, the complainant, a ten-year-old girl, lived with her great-grandmother, Sandra Campbell, and Campbell's friend, Exer Valerie. O'Bannon is the father of one of the complainant's half-siblings. The weekend of April 2, 2011, the complainant, who was seven at the time, was staying with Leona Everett, O'Bannon's mother, while Campbell was out of town.

The complainant testified that she and two other children were watching a movie in a bedroom at Everett's home. During the movie, O'Bannon came into the bedroom and sat next to the complainant on the bed. O'Bannon pulled a blanket over the complainant's legs and lower body and began rubbing her thighs. He also rubbed the outside of the complainant's vagina. The complainant asked O'Bannon to stop, but he did not; when the complainant tried to leave the bedroom, O'Bannon physically restrained her. After O'Bannon left the room, the complainant got up and asked to call Campbell. She placed three phone calls to Campbell. The first time she called, she told Campbell she wanted to go home, but she was reluctant to explain what had happened. In the second call, the complainant was still reluctant to discuss what happened, and instead told Campbell she was feeling ill. The third time the complainant phoned Campbell she told her that O'Bannon had "touched [her] in an inappropriate place."

Campbell called Valerie after receiving the second call and asked Valerie to pick up the complainant. Valerie picked up the complainant approximately 30 minutes later and took her home. On the drive home, the complainant told the details of the offense to Valerie. The complainant testified that Valerie was the

2

first person she "gave all the details to." After the complainant's testimony, Valerie testified, over objection, as the outcry witness.

Campbell testified about the three phone calls and explained that after receiving the calls, she asked Valerie to pick up the complainant. When Campbell returned from out of town, she learned that the complainant did not want to discuss the details of what had happened. Approximately one month later, Campbell contacted law enforcement authorities.

O'Bannon later confessed to a Harris County Sheriff's Office investigator that he had inappropriately touched the complainant.

II

In his first issue, O'Bannon contends the trial court erred in allowing the State to present testimony from two outcry witnesses regarding the same alleged conduct. O'Bannon contends that Campbell was the proper outcry witness, not Valerie. The State gave notice, pursuant to article 38.072 of the Code of Criminal Procedure, of its intent to use the complainant's hearsay statement. The State's notice listed three witnesses: Campbell, Valerie, and the forensic interviewer, Susan Odhiambo. At trial, O'Bannon objected to Valerie's testimony as improper outcry testimony on the grounds that Campbell was the first adult to whom the complainant had described the offense.[1]

Article 38.072 is an outcry exception to the hearsay rule. *Chapman v. State*, 150 S.W.3d 809, 812 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). A trial court's determination that an outcry statement is admissible under article 38.072 is

---

[1] Although O'Bannon did not request a hearing pursuant to article 38.072, we find he sufficiently preserved error. *See Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990); *Laredo v. State*, 194 S.W.3d 637, 640 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (hearsay objection—raised immediately before the outcry witness began to testify as to what the child told her—was sufficient to preserve the defendant's complaint.).

reviewed for an abuse of discretion. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990). The Court of Criminal Appeals has construed the statute to apply to the first adult to whom the complainant makes a statement that "in some discernible manner describes the alleged offense." *Id.* at 91. This statement must be "more than words which give a general allusion that something in the area of child abuse was going on." *Id.*

Campbell did not testify specifically to anything the complainant told her; she stated that upon hearing what the complainant said, she was "very disturbed." O'Bannon contends the following testimony from the complainant revealed that Campbell was the proper outcry witness:

> Q. And what did you tell Grandma Jo[2] that time?
>
> A. I told her what had happened. But first I went into Lorissa's room, and I called Lorissa's name. I think I whispered it, but she didn't wake up; so, I went in her closet and turned the light on and told Grandma Jo what happened.
>
> Q. So, when you had the phone and you were talking to Grandma Jo, that's when you went into the closet?
>
> A. Yes, ma'am.
>
> \* \* \* \* \*
>
> Q. And what did you tell Grandma Jo when you went into the closet?
>
> A. I told — I said, Grandma Jo, Mr. Bennett touched me in an inappropriate place.
>
> Q. And did you tell her where exactly or any details at that point?
>
> A. No, ma'am. I think she knew what part I was talking about.
>
> Q. Okay. Was that all you felt comfortable saying at that point?
>
> A. Yes, ma'am.

The complainant testified that after Valerie picked her up that night they

---

[2] The complainant refers to Campbell as "Grandma Jo," and calls Valerie "Grandma Ex."

stopped at a service station on the way home. While they were sitting at the service station, Valerie asked the complainant about what had happened at Everett's home. Valerie sat in the back seat of the car with the complainant and the complainant told her what happened. With regard to this conversation, the complainant testified:

> Q. Okay. And you hadn't told Grandma Jo that. All you had told Grandma Jo was that he had touched you in an inappropriate place?
>
> A. Yes, ma'am.
>
> Q. Did it make you feel better to tell Grandma Ex exactly what had happened?
>
> A. Yes, ma'am.
>
> Q. And did you tell Grandma Ex that night everything that had happened?
>
> A. Yes, ma'am.

Although O'Bannon contends Campbell is the proper outcry witness, the record reflects that Campbell was not the first adult to whom the complainant described the details of the offense. The complainant revealed the details of the offense to Valerie. The complainant's statements to Campbell were no more than a general allusion that abuse had occurred. Such general allusions, in which the complainant does not describe the abuse in a discernible manner, are not within the purview of article 38.072. *See Bargas v. State*, 252 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding that a complainant's statement to her grandmother that defendant had touched her "in those places" was not sufficiently descriptive to make the grandmother a proper outcry witness.).

Valerie testified as to the complainant's detailed description of O'Bannon's contact with the complainant's vagina. Valerie was the first person over the age of eighteen to whom the complainant, in some discernible manner, described the

5

offense. Valerie's account of the offense was more than a general allusion that child abuse had occurred; her statements contained sufficient information about the nature of the acts and the perpetrator to meet the requirements of article 38.072. *See Schuster v. State*, 852 S.W.2d 766, 768 (Tex. App.—Fort Worth 1993, pet. ref'd) (holding psychologist was proper outcry witness even though complainant told mother first, but child was so upset that no details were provided).

Moreover, any error in the admission of Valerie's testimony is harmless in light of the fact that the complainant testified without objection to a detailed account of the abuse. *See Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991) (error in the admission of evidence is rendered harmless if substantially the same evidence is admitted without objection.). We overrule O'Bannon's first issue.

### III

In his second, third, and fourth issues, O'Bannon contends (1) the judgment is invalid because it contains fees from the sheriff that are erroneous and unsupported; (2) the judgment is invalid because the assessed DNA court costs are unconstitutional as a matter of law; and (3) the trial court erred in not granting a hearing on the motion for new trial or the motion in arrest of judgment. Following his conviction, O'Bannon filed a motion for new trial in which he alleged discrepancies in the costs assessed in the judgment. The trial court did not hold a hearing, and the motion was overruled by operation of law.

On appeal, O'Bannon complains of an assessment of $110 in sheriff's fees for the summoning of witnesses and $250 in DNA costs collected pursuant to article 102.020(a)(1) of the Texas Code of Criminal Procedure. The only evidence of court costs in the appellate record is a document entitled, "Justice Information Management System ["JIMS"] Supplemental Cost Bill Entry," reflecting total

6

court costs of $669.00. This court has held that a JIMS screen printout without the signature of an officer specified in article 103.001 of the Texas Code of Criminal Procedure does not constitute an appropriate bill of costs and is not sufficient evidence to support a judgment in the specific amount of court costs. *Jelks v. State*, 397 S.W.3d 759, 759–60 (Tex. App.—Houston [14th Dist.] 2013, pet. filed); *Johnson v. State*, 389 S.W.3d 513, 516 (Tex. App.—Houston [14th Dist.] 2012, pet. granted).

The JIMS printout in this case is not signed; therefore, under this court's precedent, it is not evidence of court costs. Because we do not have sufficient evidence of court costs, we modify the trial court's judgment to delete the specific amount of costs assessed. For that reason, we need not address the challenge to the sheriff's fee assessment or the constitutionality of the DNA cost assessment. To that extent, O'Bannon's second and third issues are sustained. Having found insufficient evidence of court costs, we need not address whether the trial court erred in failing to hold a hearing on O'Bannon's motion for new trial concerning court costs.

IV

In a single cross-point, the State asks this court to reform the judgment to reflect the correct amount of jail time credited to O'Bannon's sentence. The judgment reflects time credited from "7/8/20**12** to 7/11/2012." The record reflects, however, that O'Bannon was arrested on July 8, 20**11**, one year prior to the date listed on the judgment. The record further reflects that O'Bannon did not post bond, and was incarcerated in the Harris County Jail from July 8, 2011, to his sentencing date, July 11, 2012.

Art. 42.03, § 2(a) of the Texas Code of Criminal Procedure provides:

In all criminal cases the judge of the court in which the defendant is convicted shall give the defendant credit on the defendant's sentence for the time that the defendant has spent in jail in said cause, other than confinement served as a condition of community supervision, from the time of his arrest and confinement until his sentence by the trial court.

The trial court is required to grant the defendant pre-sentence jail-time credit when sentence is pronounced. *See Ex parte Ybarra*, 149 S.W.3d 147, 148 (Tex. Crim. App. 2004). Reflecting the mandatory, ministerial nature of this duty, the court of criminal appeals has instructed lower courts that "[i]n the event the [trial] court fails to award such credit at the time the sentence is imposed, the trial court has the authority to correct the judgment to reflect the appropriate time credit by nunc pro tunc order and should do so." *Id.*; *see also Collins v. State*, 240 S.W.3d 925, 928 (Tex. Crim. App. 2007) ("An incorrect calculation of the amount of back-time awarded to a defendant, or the omission of any statutory back-time in the judgment can be adjusted by a motion for judgment nunc pro tunc").

The trial court, however, cannot correct a judgment nunc pro tunc after the appellate record is filed in this court. *See Meineke v. State*, 171 S.W.3d 551, 558 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). This court has authority to reform the judgment if a judgment nunc pro tunc would have been proper in the trial court. *See Steinocher v. State*, 127 S.W.3d 160, 162–63 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd) (recognizing that preferred practice is for trial court to issue judgment nunc pro tunc, but in certain instances the court of appeals may reform a judgment to correct jail-time credit). Therefore, we sustain the State's cross-point and reform the judgment to reflect time credited from July 8, 2011, through July 11, 2012.

\* \* \*

We reform the trial court's judgment to delete the specific amount of costs assessed and to reflect jail time credited from July 8, 2011, through July 11, 2012. We affirm the judgment as reformed.

/s/    Jeffrey V. Brown
        Justice

Panel consists of Justices Brown, Christopher, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).