

# NUMBER 13-21-00222-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

CHRISTOPHER ALLEN SOLIS,                                              Appellant,

v.

THE STATE OF TEXAS,                                                       Appellee.

---

### On appeal from the 24th District Court
### of Jackson County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Contreras and Justices Benavides and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Christopher Allen Solis seeks reversal of his conviction of continuous sexual abuse of R.J., a child under fourteen. *See* TEX. PENAL CODE ANN. § 21.02. Solis received a life sentence. By one issue, Solis contends that the trial court improperly allowed R.J.'s mother, C.S., to testify as the outcry witness. We affirm.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). A trial court's ruling is undisturbed absent a clear abuse of discretion. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

According to article 38.072 of the Texas Code of Criminal Procedure, an outcry witness must be the first person who is eighteen years or older "to whom the child makes a statement that in some discernible manner describe[s] the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Chapman*, 150 S.W.3d at 812. Such a statement is not inadmissible hearsay. TEX. CODE CRIM. PROC. ANN. art. 38.072.

## II. PERTINENT FACTS

C.S. testified that when R.J. was thirteen years old, she told C.S. that "daddy has been making me do inappropriate things," and C.S. replied, "[W]ell, what are you talking about. Like what[?]" According to C.S., R.J. said, "[H]e's been making me do things with my mouth and my butt."

Solis's trial counsel interjected, "Your Honor . . . I have a motion on file to challenge the reliability of the outcry, and since this is a bench trial[,] we have more flexibility." The trial court agreed with Solis that C.S. should be allowed to continue her testimony regarding R.J.'s outcry, and it instructed the State to "[s]tay with the outcry . . . [a]nd then

2

before you move on we'll address" Solis's objection.

The State asked if R.J. provided any more details at that time, and C.S. replied, "No." C.S. clarified that R.J. called Solis "Daddy," and Solis is R.J.'s stepfather. C.S. testified that she asked Solis if he had abused R.J., and he replied that he had not. C.S. stated that she was shocked and confused, but she had to go to work. She instructed her three daughters to lock themselves in the bedroom until she returned from work. According to C.S., when she returned home, Solis met her and told her "that [R.J.] said that she was just mad and that she didn't mean anything that she said. Can we just forget it[?] Forget anything happened." Subsequently, C.S. took her children from the home and went to report the allegations to the police. Once Solis was arrested, C.S. and her children returned home.

C.S. stated that she "understood what [R.J.] was trying to say" when she said that Solis made her do inappropriate things with her mouth and butt.

Solis's trial counsel then stated that he believed that the State was moving past the outcry and that an outcry statement is only admissible if: "A trial court finds in a hearing conducted outside of the presence of the jury that the statement is reliable based on the time, content and circumstances of the statement." Solis's trial counsel said, "It's the content is what I was really focusing on, because the content was so vague that I don't think it's reliable. That's the issue here." The prosecutor replied that "if someone says they're doing inappropriate things with you and they say the mouth and the butt or the anus . . . I think it's pretty clear that—what we're talking about." The trial court agreed with

3

the State and overruled the objection.

R.J., who was fifteen at the time of the trial, testified that she told her mother Solis "had been teaching [her] sex from a young age" and that she made it clear to her mother that Solis had been performing acts that were "sexual in nature." R.J. stated that Solis began sexually abusing her when she was "around 5 or 6."

R.J. testified that Solis would check on her at bedtime, and to help her sleep, Solis would carry her "around the house or rub [her] back." According to R.J., "After a few months of the normal checking up on [her, Solis] would start to ask [her] to do more . . . sexual things." R.J. said, "I think the first thing he asked of me was oral sex." R.J. explained that "oral sex" "[i]n crude terms [meant] it would be him teaching me how to suck his dick." R.J. testified that another term for "dick" is penis. According to R.J., "later on he would have [her] move [her] head in such a way that he would ejaculate." R.J. stated that this occurred "[o]n multiple occasions" during several years from the age of five or six. R.J. approximated that she performed oral sex on Solis "at least" once a week and continued until she was thirteen years old. According to R.J., when she was "maybe 8 or 9," Solis began sexually abusing her by inserting his penis into her anus, which was painful and "extremely uncomfortable." R.J. clarified that Solis successfully penetrated her anus with his penis twice—once when she was approximately eight years old and once when she was twelve years old. R.J. said that Solis touched her entire body including her breasts, anus, and pelvic area, which Solis referred to as her "pussy."

4

Leslie Kallus, the sexual assault nurse examiner who examined R.J., testified as follows:

> [R.J.] stated ["]I'm here because my dad, actually my [stepdad] Christopher Allen Solis has been doing something to me for a long time. Since I was 5 to 6 years old.["]
>
> . . . .
>
> ["It started happening about once a week and then seven times a week. Sometimes multiple times per the day. He would do it when mom was working a day shift.["]
>
> ["]It's been happening so long he would use my mouth and butt.["]
> . . . .
>
> ["]Once or twice he convinced me to put his private part in . . . my butt.["]
>
> . . . .
>
> ["][H]e would have me use my mouth and his private part mess would get in my mouth . . . .["]
>
> . . . .
>
> ["H]e . . . would put his private part once or twice [in my anus]. I told him we were stopping because it would hurt.["]

### III.    DISCUSSION

By his sole issue, Solis contends that the trial court improperly allowed C.S. to testify as the outcry witness. The State argues, among other things, that error, if any, was harmless. We agree with the State.

C.S. stated that R.J. told her that Solis was doing inappropriate things and making R.J. do things with her mouth and butt. R.J. and Kallus testified, without objection, that Solis sexually abused R.J. by penetrating her mouth and anus with his penis.

5

Therefore, even assuming, without deciding, that the trial court improperly allowed C.S. to testify as the outcry witness, we conclude that the error was harmless because the same evidence was admitted, without objection, elsewhere. *See* TEX. R. APP. P. 44.2; *Chapman*, 150 S.W.3d at 815 (finding the trial court's error in admitting improper outcry testimony was harmless because the evidence was cumulative); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant, pediatrician, and medical records); *Broderick v. State*, 35 S.W.3d 67, 75 (Tex. App.—Texarkana 2000, pet. ref'd) (concluding that the trial court erroneously designated an officer as the outcry witness and determining that the error was harmless because the same evidence was introduced through other testimony without objection); *see also Skiba v. State*, No. 13-17-00045-CR, 2018 WL 6626724, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (explaining that any error associated with the admission of an improper outcry witness was harmless because the complainant later testified about the sexual abuse (citing *Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (concluding that error in admitting testimony of an improper outcry witness was harmless because the child testified, without objection, to the same facts))). Therefore, no reversible error occurred. *See Dunn v. State*, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.) ("The cases uniformly hold that the rule is that the improper admission of evidence does not constitute reversible error if the same facts are proved

by other properly admitted evidence." (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999))). We overrule Solis's sole issue.

### III. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
31st day of March, 2022.

7