Affirmed and Opinion filed July 7,
2011.

 

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00395-CR



Tyrone Lacaze, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 228th District Court

Harris County, Texas

Trial Court
Cause No. 1125671



 

OPINION

A jury convicted appellant Tyrone Lacaze of capital
murder, and the court sentenced him to imprisonment for life without parole.  Appellant
challenges his conviction in four issues.  In his first three issues, appellant
claims the trial court (1) erred by admitting hearsay testimony, (2) violated
his right to confrontation, and (3) made an impermissible comment on the weight
of the evidence in the jury charge.  Appellant also argues the evidence is
insufficient to support his conviction due to a lack of corroboration of an
accomplice witness.  We affirm.

Background

Appellant was charged
with the October 8, 2006 murder of fifteen-year-old Delores Riley (also known
as Dee Dee).  The State alleged that appellant murdered Dee Dee in retaliation
for her providing information to police about the September 17, 2006 murder of
Dee Dee’s boyfriend, Dameion Vance.

Vance was murdered outside the Riley apartment. 
Despite family warnings to “be quiet,” Dee Dee talked to police shortly after
the murder.  Sergeant Norman Ruland of the Houston Police Department (HPD) testified
that Dee Dee reported seeing Vance and Eric Watson get into a fist-fight on September
17.  When Eric lost, he said he would return and kill Vance.  Dee Dee saw Eric
return with his brother and cousin, Joseph Watson and Melvin Lamerson.  The men
were headed in Vance’s direction, and they told Dee Dee to go inside her house. 
A short time later, Dee Dee and others inside her apartment heard gunshots.  Among
other evidence, police recovered thirty-one 9mm cartridge casings from the
crime scene.

According to Sergeant Ruland, Dee Dee said Eric
threatened her a day later “not to be running her mouth.”  On September 28,
Eric was arrested for the Vance murder.  Around October 5, Dee Dee told Sergeant
Ruland that she was attacked by Kevin Lamerson, a relative of Eric, Joseph, and
Melvin.  Kevin had threatened, punched, and thrown Dee Dee on the ground.  On
October 6, Kevin was arrested for retaliation.  Ashley Riley, Dee Dee’s older
sister, also testified that she had interrupted Joseph choking Dee Dee outside
the Riley apartment and that Joseph was later arrested.

During the afternoon on October 7, appellant and Sendreka
Nelson (also known as Peg or Pig)—a family friend who lived in the same
apartment complex—came to the Riley home.  Ashley was home at the time, but Dee
Dee was not.  Ashely testified that Nelson used the phone while appellant ate
some ice.  After about ten minutes, the couple left.  According to Ashley, at
about 11:00 p.m. that night, Nelson returned to the Riley home.  Nelson made a
phone call and then chatted with Dee Dee while Dee Dee was taking a bath. 
Nelson later told Ashley that Dee Dee was “gone,” and then Nelson left the
apartment.

At trial, Nelson testified as an accomplice witness. 
She explained that she and appellant drove to Dee Dee’s home on the night of
the murder, and appellant waited outside while Nelson asked Dee Dee to come for
a ride in her car.  Appellant drove the vehicle to his friend’s apartment
complex, and during the drive, he asked Dee Dee what she knew about the Vance
murder and what she had said to police.  Dee Dee told appellant that she had talked
with police about Eric killing Vance and Kevin assaulting her.  When they
arrived at the destination, appellant told both girls to get out of the car. 
Nelson and Dee Dee walked away from the car, but then appellant started
shooting at Dee Dee.  She was struck with four bullets, three of which were
fatal.  Among other evidence, police later recovered ten 9mm cartridge casings
from the scene.

Nelson testified she ran back to the car during the
shooting, and appellant drove the couple away from the scene.  He said he shot
Dee Dee ten times and he had one more bullet.  He said he shot Dee Dee because
Eric did not kill Vance—appellant and Joseph had actually killed Vance. 
Appellant did not want Dee Dee to come to court.  According to Nelson, before
the couple fled to New Orleans several weeks later, appellant gave the murder
weapon to Joseph.

Dee Dee’s body was discovered shortly after the
murder, but it was not identified until October 21.  In the meantime, a friend
of the Riley family, Jeffery Peveto, was robbed at gunpoint in his apartment at
about 3:15 p.m. on October 13.  The assailant fired a gun during the robbery, and
police later recovered one 9mm cartridge casing from the scene.  Peveto made a
tentative identification of appellant as the robber when police showed him a
photo spread in December 2006.  He made the identification again from the same
photo spread in July 2007, and he made an in-court identification.  At trial, a
photo of Joshua Lamerson was shown to Peveto; he denied that the man in the
photo was the robber.

At about 11:00 p.m. on October 13, Joshua Lamerson
was arrested with a 9mm pistol.  Ballistics testing of spent cartridge casings
from the pistol matched fifteen of the cartridge casings recovered from the
Vance murder crime scene, all of the cartridge casings recovered from the Riley
murder crime scene, and the cartridge casing recovered from the Peveto
robbery.  Further, police discovered from Nelson’s cell phone records that her
phone had been used to call the Riley home, and a call was made from the Riley
home to the cell phone on the night of the murder.  Data from cell phone towers
showed that the cell phone was in the area of the Riley home and then traveled
to the area of town where Dee Dee’s body was found at a time consistent with
Dee Dee’s disappearance and murder.  Police initially arrested Joshua and
Nelson for the Riley murder, but those charges were later dropped.

The State charged appellant with the capital murder
of Dee Dee based on retaliation.  See Tex.
Penal Code Ann. § 19.03(a)(2) (West 2011).  The jury found appellant
guilty, and because the State did not seek the death penalty, appellant
received an automatic sentence of life without parole.  See Tex. Penal Code Ann. § 12.31 (West 2011).

Corroboration of Accomplice
Witness Testimony

            In his fourth
issue, appellant challenges the sufficiency of the evidence corroborating the
testimony of the accomplice witness, Sendreka Nelson.  

A conviction obtained in reliance upon accomplice
testimony must be supported by sufficient corroborating evidence tending to
connect the defendant with the offense committed.  Tex. Code Crim.  Proc. Ann. art. 38.14 (West 2005).  When
reviewing the sufficiency of the evidence to corroborate accomplice testimony,
we eliminate the accomplice testimony and then examine the remaining portions
of the record to see if there is any evidence that tends to connect the
defendant with the commission of the offense.  Malone v. State, 253
S.W.3d 253, 257 (Tex. Crim. App. 2008).  The corroborating evidence need not
rise to the level of proof beyond a reasonable doubt.  Id.  Instead,
the evidence must simply link the defendant to the commission of the offense
and show that rational jurors could conclude that the evidence sufficiently
tended to connect the defendant to the offense.  Simmons v. State, 282
S.W.3d 504, 508 (Tex. Crim. App. 2009).  We view the evidence in the light most
favorable to the jury’s verdict.  Brown v. State, 270 S.W.3d 564, 567
(Tex. Crim. App. 2008).

Appellant primarily argues that Peveto, who provided
the identification of appellant from an aggravated robbery, was not credible
because he was “an admitted crack addict” at the times he made identifications
from two photo spreads, and he was able to make only a tentative identification
of appellant when he viewed the photo spread the first time.  However, we must
defer to the jury on the credibility determination and assume that the jury
found Peveto to be a credible witness in his identification.  See id.

Appellant further argues that even if the jury
believed Peveto, the evidence does not corroborate Nelson’s testimony because
the aggravated robbery had “no relation to the charged offense other than the
fact that the same firearm was used.”  But the fact that the same firearm was
used by appellant connects him to the murder weapon, thus corroborating
Nelson’s testimony.  See Cockrum v. State, 758 S.W.2d 577, 582 (Tex.
Crim. App. 1988) (“Proof that connects an accused to a weapon used in an
offense is proper corroborative evidence.”).  Forensic testing also linked the
same firearm to the Vance murder, and Dee Dee was cooperating with police to
find Vance’s killers.  Additional corroborating evidence included Ashley’s
testimony placing appellant with Nelson inside the Riley home on the day of the
murder.  See McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997)
(“Evidence that the defendant was in the company of the accomplice at or near
the time or place of the offense is proper corroborating evidence.”).

After eliminating the accomplice testimony from our
consideration and examining the non-accomplice evidence in the light most
favorable to the verdict, we conclude rational jurors could find that the
non-accomplice evidence tends to connect appellant to the offense.

Appellant’s fourth issue is overruled.

Jury Charge

In his third issue, appellant argues that the trial
court impermissibly commented on the weight of the evidence by including
“corroboration” in the list of acceptable uses for the extraneous offense
evidence admitted at trial.  He argues in particular that “[t]he inclusion of
‘corroboration’ essentially told the jury where they should look to bind up the
State’s case and find the necessary evidence for conviction.”

The trial court charged the jury as follows:

You are further instructed that if there is any evidence
before you in this case regarding the defendant’s committing an alleged offense
or offenses other than the offense alleged against him in the indictment in
this case, you cannot consider such evidence for any purpose unless you find
and believe beyond a reasonable doubt that the defendant committed such other
offense or offenses, if any, and even then you may only consider the same in
determining the intent, motive, relationship of the parties, identity of the
defendant, or corroboration, if any, in connection with the offense, if any,
alleged against him in the indictment and for no other purpose.

A trial court must submit a charge to the jury that
instructs them on the law to be applied to the case, but the court may not
submit a charge that comments on the weight of the evidence.  Tex. Code Crim. Proc. Ann. art. 36.14 (West
2007).  A trial court comments on the weight of the evidence if the charge
“assumes the truth of a controverted issue,” Whaley v. State, 717 S.W.2d
26, 32 (Tex. Crim. App. 1986), or “directs undue attention” to particular
evidence, Giesberg v. State, 945 S.W.2d 120, 124 (Tex. App.—Houston [1st
Dist.] 1996) (citing Hawkins v. State, 656 S.W.2d 70, 73 (Tex. Crim. App.
1983)), aff’d, 984 S.W.2d 245 (Tex. Crim. App. 1998)).  In determining
whether the charge improperly comments on the weight of the evidence, we
consider the court’s charge as a whole and the evidence presented at trial.  See
Russell v. State, 749 S.W.2d 77, 79 (Tex. Crim. App. 1988).

The parties agree that a trial court should instruct
the jury on the proper, limited use of extraneous offense evidence because an
accused may only be tried for the offense charged and not with being a criminal
generally.  See Owens v. State, 827 S.W.2d 911, 914 (Tex. Crim. App.
1992).  Thus, it is proper for a trial court to submit a charge regarding
extraneous offense evidence that (1) explains the jury may not consider the
extraneous offense evidence, if any, unless the jury concludes beyond a
reasonable doubt that the defendant committed the extraneous offense, (2)
includes a list of the acceptable uses of extraneous offense evidence
applicable to the facts of the case, and (3) explains the jury may not consider
the evidence for any purpose other than for the uses specifically identified in
the charge.  See Purvis v. State, 63 S.W.2d 1030, 1032 (Tex. Crim. App.
1933), cited with approval in Gillon v. State, 492 S.W.2d 948, 949 (Tex.
Crim. App. 1973); Blackwell v. State, 193 S.W.3d 1, 15–16 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d).  Such a charge “applies the law to
the facts of the case to the extent it is possible to do so without commenting
on the weight of the evidence.”  Brooks v. State, 580 S.W.2d 825, 833
(Tex. Crim. App. 1979) (holding that an extraneous offense charge was proper).

Rule 404(b) of the Texas Rules of Evidence identifies
a number of acceptable uses for extraneous offense evidence, such as intent or
identity, which are frequently included in jury charges.  See, e.g., Blackwell,
193 S.W.3d at 15–16; see also Elizabeth
Berry & George Gallagher, Texas Criminal Jury Charges §§ 3:1420,
3:1430 (Supp. 2010).  Additionally the Court of Criminal Appeals has explained,
“We unequivocally hold that extraneous offense evidence is admissible under
Rule 404(b) for the purpose of corroboration under Article 38.14.”  Lawton
v. State, 913 S.W.2d 542, 553 n.9 (Tex. Crim. App. 1995).

Accordingly, we hold that the trial court did not err
by including “corroboration” in the list of acceptable uses for extraneous
offense evidence.  The corroborative nature of the extraneous offense evidence
was not unduly emphasized by including “corroboration” in the instruction.  “Corroboration”
was given no more or less emphasis than any other proper use of the extraneous
offense evidence, and the potential use of evidence for corroboration was
conditioned with the limiting language “if any.”  See Miller v. State,
753 S.W.2d 473, 476 (Tex. App.—Houston [1st Dist.] 1988, pet ref’d) (holding
that use of the word “murder” in the jury charge was not a harmful comment on
the weight of the evidence because the court included limiting language “if
any”).

Appellant’s third issue is overruled.

Hearsay

In his first issue, appellant contends that the trial
court erred “throughout the trial by permitting the State’s witnesses to
testify to hearsay.”  The State responds that the issue should be overruled
because (1) appellant waived any error by failing to identify the erroneously
admitted evidence with sufficient specificity in his brief, (2) appellant failed
to preserve error by not making evidentiary objections during trial, (3) the
trial court did not err in admitting the evidence because it was not hearsay—not
offered for the truth of the matter asserted—and, (4) any such error was
harmless because identical evidence was admitted elsewhere without objection.

A.    Waiver
and Preservation of Error

An appellant’s failure to include citations to the
record in his or her brief may constitute waiver of error on appeal.  See
Muhammed v. State, 331 S.W.3d 187, 195 (Tex. App.—Houston [14th Dist.]
2011, pet. ref’d); see also Tex.
R. App. P. 38.1(i).  In his brief, appellant complains broadly about the
admission of hearsay testimony, but he also provides a number of specific
citations to the record and identifies some of the complained-of testimony.[1]  We hold
these record references are sufficient to satisfy the briefing requirement of
Rule 38.1(i).

But an appellant must also preserve error in the
trial court based on the erroneous admission of evidence by making a specific
and timely objection and obtaining a ruling from the trial court.  See Tex. R. App. P. 33.1(a); see also
Tex. R. Evid. 103(a)(1).  The
appellant must object each time evidence is offered unless the appellant
receives a running objection or requests a hearing outside the presence of the
jury.  Dreyer v. State, 309 S.W.3d 751, 754 (Tex. App.—Houston [14th
Dist.] 2010, no pet.) (citing Haley v. State, 173 S.W.3d 510, 516–17
(Tex. Crim. App. 2005)).  Only some of the pages of the record cited in
appellant’s brief contain objections—and only to particular questions without
running objections.  Although appellant failed to object to each question on
the referenced pages of the record, we hold that appellant has preserved error
based on the admission of evidence for any testimony on the referenced pages
for which a hearsay objection appears.

Thus, appellant has preserved error for the following
ten questions and answers:

Testimony
of Sergeant Norman Ruland

1.         3 RR 57

Q         Why was Ashley Riley calling you?

A         Because Dee Dee had gone missing.

2.         3
RR 60

Q         How was [Sergeant Manny Cruz] able to make that
connection [that he believed his murder victim was Dee Dee]?

A         The family had contacted him.  Apparently they
had seen a — they had done a sketch on the unknown black female and a clothing
description of what she was wearing.  And so, the family had contacted Manny. 
And he took the sketch and the clothing description over there to them.  They
looked at it and said yes, that’s going to be —

3.         3
RR 64

Q         What information did [Ashley Riley] give that
helped you in your investigation the second time that you talked to her about
the disappearance of Delores or Dee Dee?

A         She gave me a name.

4.         3
RR 67

Q         And when you said those names [the Watsons and
Lamersons] did that ring a bell with [Officer Roland Walker, a security officer
employed by Dee Dee’s apartment complex]?

A         Yes, it did.

5.         3
RR 69

Q         And what were the results [of ballistics testing]
that you knew of?

A         Ms. Downs advised me that she had scientifically
linked the gun taken from — that Joshua Lamerson was arrested with to the
murder to — as being the — I’m sorry.  Let me rephrase that.  Ms. Downs advised
me that the shell casings at the Delores Riley murder scene and the shell
casings at the Dameion Vance murder scene were fired in the weapon that Joshua
Lamerson was arrested with.

6.         3
RR 70

Q         And do you know what happened to the gun when
Joshua Lamerson was arrested with it?

A         Yes

Q         And what was that?

A         Tagged into the HPD property room.

7.         3
RR 73–74

Q         At that time do you know whether or not the name
of T or Tyrone had come up at some point in discussions that [other
investigating officers] had or that you had?

A         The name T.

8.         3
RR 75

Q         And what were those names that [Joshua Lamerson]
mentioned?

A         The names he mentioned to me were T, Tyrone and
Peg.

9.         3
RR 8[2]

Q         And who did [Nelson] say shot Delores Riley?

A         A man by the name of Tyrone LaCaze.

 

Testimony of Officer Gregory Breaux

10.       4 RR 59

Q         What did they tell you happened?”

A         Well, we interviewed Mr. [Peveto] first and he
went on to tell us his story about what occurred.  That he was inside — they
were inside the apartment.  He was — just got paid on that day.  And he was
sitting there doing a crossword puzzle when he heard a knock at the door.  And
they looked out and saw it was a gentleman and then he decided he wasn’t going
to answer the door and went back and sat down.

 

B.     Admissibility
of the Evidence and Harmlessness of Any Error

We review a trial court’s admission of evidence for
abuse of discretion.  Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim.
App. 2002).  The trial court does not abuse its discretion unless the court
acts outside the zone of reasonable disagreement.  Taylor v. State, 268
S.W.3d 571, 579 (Tex. Crim. App. 2008); Montgomery v. State, 810 S.W.2d
372, 391 (Tex. Crim. App. 1990) (op. on reh’g).

Hearsay, a statement made by the declarant other than
while testifying and offered to prove the truth of the matter asserted, is not
admissible.  Tex. R. Evid.
801(d); Tex. R. Evid. 802. 
Although a police officer’s testimony may be inadmissible due to hearsay,[2] an officer
may describe statements made by others for the purpose of showing why the
defendant became a suspect and to explain the events and circumstances leading
to the defendant’s arrest.  See Dinkins v. State, 894 S.W.2d 330, 347
(Tex. Crim. App. 1995); Reed v. State, 794 S.W.2d 806, 809 (Tex.
App.—Houston [14th Dist.] 1990, pet ref’d).

Most of the testimony recited above falls within the
holding of Dinkins as an explanation of how appellant became the
suspect.  In particular, Officer Ruland took the jury step-by-step through the
investigation to explain how all of the pieces of evidence fit together to make
appellant the suspect in Dee Dee’s murder.  His testimony that related
conversations with Joshua Lamerson and Sendreka Nelson helped explain why the
investigation turned away from those two suspects and toward appellant.

Further, appellant correctly acknowledges in his
brief that “the trial court stated, over and over, that the evidence ‘is not
admitted for the truth of the matter asserted.’”  For all but one of the
excerpts above, the trial court explicitly stated that the testimony was not
admissible for the truth of the matter asserted but was only admissible to
explain the officers’ actions.[3] 
The trial court acted in accordance with the Rules of Evidence in limiting the
admissibility of the out-of-court statements for a particular purpose.  See
Tex. R. Evid. 105(a).  Appellant
argues that the trial court “never directly or concisely or clearly explained
this instruction to the jury,” and the jury “should not have been expected to
understand the finer points of hearsay like ‘the truth of the matter
asserted.’”  But we generally presume that juries follow instructions.  See
Williams v. State, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996); Waldo v.
State, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).[4]  And any
error with respect to the hearsay instruction has not been preserved for our
review in the absence of appellant’s request for a different instruction in the
trial court.  See Tex. R. Evid.
105(a); Thacker v. State, 999 S.W.2d 56, 61 (Tex. App.—Houston [14th
Dist.] 1999, pet. ref’d).

The trial court did not act outside the zone of
reasonable disagreement and thus did not abuse its discretion in admitting the
challenged evidence.  Regardless, even if the trial court erred in admitting
some of the testimony, any such error was harmless in this case.  We may not
reverse a conviction for nonconstitutional error unless the error affects the
defendant’s substantial rights.  See Tex.
R. App. P. 44.2(b).  The admission of inadmissible hearsay is
nonconstitutional error, and such error does not affect a substantial right if,
after examining the record as a whole, we are reasonably assured that the error
did not influence the verdict or had but a slight effect.  Chapman v. State,
150 S.W.3d 809, 814 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).  Accordingly,
“the improper admission of evidence is not reversible error if the same or
similar evidence is admitted without objection at another point in the trial.” 
Id.; accord Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App.
1999); Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

Here, other witnesses who testified at trial provided
most of the substantive complained-of testimony.  The witnesses included Ashley
Riley, Kim Downs, Jeffrey Peveto, Sendreka Nelson, and Mark Karl, a property
disposition officer with the homicide division of the HPD.  After examining the
record as a whole, we are reasonably assured that the error did not influence
the verdict or had but a slight effect.

Appellant’s first issue is overruled.

Confrontation of Witnesses

In his second issue, appellant argues that the trial
court violated his right to confront and cross examine witnesses when the court
permitted Sergeant Ruland to repeat out-of-court statements made by
non-testifying witnesses.  The State argues that this issue should be overruled
because (1) appellant waived any error by failing to identify the erroneously
admitted evidence with sufficient specificity in his brief, and (2) appellant
failed to preserve error by not making the proper objections during trial.

Appellant correctly notes that counsel repeatedly
objected to hearsay.  But an objection to hearsay does not preserve error based
on a violation of the Confrontation Clause.  Reyna v. State, 168 S.W.3d
173, 179 (Tex. Crim. App. 2005); see Tex.
R. App. P. 33.1(a).  Appellant does not cite to any objection based on a
violation of the Confrontation Clause, and this court has found none in the
record.  Accordingly, appellant has failed to preserve this alleged error for
appeal.  

Appellant’s second issue is overruled.  Having
overruled all of appellant’s issues, we affirm the trial court’s judgment.

 








                                                                                    

                                                                        /s/        Sharon
McCally

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Seymore, and McCally.

Publish
— Tex. R. App. P. 47.2(b).









[1]
Appellant cites to the following portions of the record: 3 RR 57; 3 RR 60; 3 RR
64–70; 3 RR 73–78; 3 RR 83; 3 RR 87–88; and 4 RR 59–60.





[2]
See Schaffer v. State, 777 S.W.2d 111, 114–15 (Tex. Crim. App. 1989).





[3]
For the ninth excerpt, the prosecuting attorney explained in front of the jury
that the evidence sought to be admitted was “not for the truth of the matter
asserted.”





[4]
See also Sallings v. State, 789 S.W.2d 408, 416–17 (Tex. App.—Dallas
1990, pet. ref’d) (concluding the arrest warrant was not improperly admitted as
hearsay because the court instructed the jury under Rule 105(a) that the
statements in the warrant should not be considered for their truth); Gilmore
v. State, 666 S.W.2d 136, 150 (Tex. App.—Amarillo 1983, pet. ref’d)
(concluding the evidence was not hearsay in part because the trial court
instructed the jury as to the proper purpose for considering the evidence and
explained that the evidence should not be considered for the truth of the
matters asserted therein).

We also note that the Fort Worth Court of Appeals, in
an unpublished decision, reached the same result in a situation similar to
appellant’s.  See Williams v. State, No. 2-03-148-CR, 2004 WL 2320370,
at *3 (Tex. App.—Fort Worth Oct. 14, 2004, pet. ref’d) (mem. op., not
designated for publication) (finding no error when the officer testified about
statements made by the complainant because the trial court stated that it was
not admitting the evidence for the truth of the matter asserted but rather to
show the officer’s motivation for later actions; presuming that the jury
followed the limiting instruction).