

# NUMBER 13-19-00362-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RICHARD ANTON KIOLBASSA,                                        Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

### On appeal from the 36th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina
Memorandum Opinion by Justice Tijerina**

Appellant Richard Anton Kiolbassa challenges his conviction for indecency with a child by contact, a second-degree felony. *See* TEX. PENAL CODE ANN. § 21.11(a)(1). Kiolbassa received a twenty-year term of confinement. By three issues that we have renumbered and reorganized, Kiolbassa contends that the (1) evidence is insufficient to satisfy the element of "intent to arouse," (2) trial court designated the improper outcry

witness, and (3) trial court's admission of the State's expert witness's testimony violated Rule 702 and constituted improper bolstering. We affirm.

## I. BACKGROUND

E.B. testified that on June 25, 2018, he allowed Kiolbassa to stay at his residence overnight.[1] According to E.B., he awoke when he heard his child, A.B., crying; when he went to check on her, he found Kiolbassa "touching her leg . . . touching her thigh . . . right above the knee." E.B. stated that Kiolbassa claimed he was comforting A.B. because she had a nightmare. E.B. allowed Kiolbassa to remain in the home, but he told him to get away from A.B. According to E.B., A.B. did not immediately talk to him about the incident.

E.B. stated that he became aware that A.B. had made an outcry of sexual abuse on July 18, 2018, after a detective came to his home and informed him that A.B. told her school counselor that Kiolbassa had touched her. E.B. said that A.B. did not tell him what had happened because the child was "afraid" that he would be angry at her. According to E.B., the detective instructed him not to discuss the situation with the child because doing so "could be considered coaching."

On cross-examination, E.B. testified that when he found Kiolbassa in the child's bedroom, he did not suspect that Kiolbassa had committed any sexual assault. E.B. reiterated that he learned of A.B.'s sexual assault claim when the detective told him about her statement to her school counselor.

Kelly Pape-Sims, A.B.'s school counselor, testified that A.B. said that her father's

---

[1] We use initials to protect the identity of the child complainant. *See* TEX. R. APP. P. 9.8(b) & cmt. ("This rule does not limit an appellate court's authority to disguise parties' identities in appropriate circumstances in other cases.").

friend had "touched her inappropriately" when he was "having a stay-over or a sleep-over with them . . . . [A.B. said that h]e pushed down her skirt and her shorts and touched her in the private areas." The trial court admitted a drawing A.B. made for Pape-Sims showing where she claimed that Kiolbassa touched her.

A.B., an eight-year-old child at the time of trial, testified that "whenever my siblings were sleeping, and he touched me under the clothes on my private right here, and my dad caught him doing it." A.B. indicated that Kiolbassa touched her vagina. A.B. identified Kiolbassa as the person who touched her. A.B. acknowledged that she reported the incident to her school counselor and stated that she did not like Kiolbassa after what he had done. A.B. testified that she told her counselor about the incident prior to telling her father.

On cross-examination by Kiolbassa, A.B. denied that she had a nightmare or that she was upset by a dream prior to the incident. Kiolbassa asked A.B. if she told E.B. what had occurred when it happened. A.B. replied, "No." A.B. stated that she told E.B. about the incident a couple of nights later. Kiolbassa's trial counsel asked, "[S]o your dad knew already by, let's say, June 26th or 27th; is that correct, two days after it happened?" A.B. said, "I don't remember how many days."

Kiolbassa testified that on the night of the incident, he went to the bathroom and smelled urine as he passed A.B.'s room so he asked her if she peed the bed. According to Kiolbassa, A.B. did not respond but appeared "very mad." Kiolbassa said he told A.B. to tell her parents if she peed her bed. Kiolbassa denied ever being with any of E.B.'s children without one of the parents present. Kiolbassa claimed he was "very surprised"

3

that an allegation that he was next to A.B.'s bed had been made because "that never happened." Kiolbassa stated that he spent the night at E.B.'s home and left the next day. Kiolbassa said, "So I don't know what [E.B.] was talking about him getting mad. None of that ever even happened ever." Kiolbassa testified, "I was never mentioned about no nightmare [sic]. I never was caught touching his daughter. None of that ever even occurred." Kiolbassa's trial counsel asked if he thought A.B. was mad at him. Kiolbassa replied:

> I don't know. I have been blessed to be around a lot of children, and this is the first one I have ever . . . I don't even know how to say it but evil. She disliked me from the get-go. I can't see the hatred out of children like this. I have never seen it before.

> On cross-examination, the State asked Kiolbassa about his use of the word "evil."

Kiolbassa replied, "I wouldn't have any other word for it because I serve Christ, and I believe in evil and good." Kiolbassa said, "What would you call it, brother? She flat out lied."

The jury found Kiolbassa guilty. This appeal followed.

## II.     SUFFICIENCY OF THE EVIDENCE

By his first issue, Kiolbassa challenges the "intent to arouse" element of indecency with a child by contact.

## A.     Standard of Review and Applicable Law

In determining the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d

4

159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

A person commits indecency with a child if the person engages in sexual contact with a child younger than seventeen or causes the child to engage in sexual contact. TEX. PENAL CODE ANN. § 21.11(a)(1). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child if committed with the intent to arouse or gratify the sexual desire of any person. *See id.* § 21.11(c). The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct. *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet ref'd) (citing *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981)).

A complainant's testimony alone is sufficient to support a conviction for indecency with a child. *Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg

5

2008, no pet.); *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1) (requiring no corroboration of a child victim's testimony when defendant violated § 22.021 of the penal code); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd). Furthermore, corroboration of the victim's testimony by medical or physical evidence is not required.  *Soto*, 267 S.W.3d at 332; *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi–Edinburg 2006, no pet.); *see* TEX. CODE CRIM. PROC. ANN. art. 38.07(a), (b)(1).

**B.    Discussion**

Kiolbassa claims that an accidental touching does not support a finding "that [he] touched [the child] with the intent to arouse or gratify [his] sexual desire" and "[t]he evidence in this case failed to provide a rational basis for the jury to infer that [he] had any intent to gratify himself or become aroused when he interacted with A.B." Kiolbassa argues that he denied E.B.'s version of events and that he testified that another of E.B.'s male friends also spent the night at E.B.'s home on the night of the incident. Kiolbassa states, "If the lights were out during the middle of the night, there is no way to know if any touching was a mere accident or the touching was done by [E.B.'s] other house guest." Kiolbassa also points out that none of the "other children [in the home] were interviewed or presented as witnesses," E.B.'s wife did not testify, he had no history of sexual abuse, "his daughter testified to this at sentencing, and the record was clear that [he] was upset to have been accused of such an act." Finally, according to Kiolbassa, "If there was any

6

touching, it is highly likely that it was accidental in the middle of the night, not done with the requisite specific intent to arouse."

We reject Kiolbassa's arguments. His attacks on the evidence presented are misplaced as those issues were for the jury to decide, and his testimony that he did not commit the offense was clearly rejected by the jury. As the sole judge of the credibility of witnesses, the jury was free to accept or reject any or all of the evidence presented by either side. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Therefore, even if Kiolbassa is correct that there were inconsistencies in the testimony presented and other conclusions could be inferred from the evidence, it was up to the jury to decide whether to believe or disbelieve such testimony. *See id.* Moreover, the jury was free to accept or reject some, all, or none of the child's testimony in this case. Here, A.B. testified that Kiolbassa touched her vagina while she lay in her bed at night, and E.B. testified that he was asleep when he heard A.B. crying, went to her room, and found Kiolbassa in A.B.'s room rubbing her leg.

Kiolbassa's "intent to arouse or gratify [his] sexual desire" can be inferred from the "conduct, remarks, [and] all the surrounding circumstances." *See Jimenez v. State*, 507 S.W.3d 438, 440 (Tex. App.—Fort Worth 2016, no pet.). Kiolbassa's conduct of sneaking into A.B.'s room and touching her vagina, and the circumstances of doing so while everyone in the home was asleep and then claiming that he chose to "comfort" A.B. instead of calling her parents when he supposedly heard her crying would have justified an inference of his intent to arouse or gratify his sexual desire. *See Tienda v. State*, 479 S.W.3d 863, 870 (Tex. App.—Eastland 2015, no pet.) (finding that, although complainant

7

and defendant were clothed, the evidence was sufficient to show an intent to arouse when the appellant touched his penis to complainant's pelvis on her bed while her mother was away). We overrule Kiolbassa's first issue.

## III.    OUTCRY WITNESS

By his second issue, Kiolbassa contends that the trial court abused its discretion by allowing Pape-Sims to testify as the outcry witness.

## A.    Standard of Review and Applicable Law

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." *Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) (citing TEX. R. EVID. 801(d)). An exception to the hearsay rule is found in article 38.072 of the Texas Code of Criminal Procedure which allows admission of certain out-of-court "outcry" statements that, among other things, describe the alleged offense and were made by a child victim who is younger than fourteen years of age if the defendant is charged with certain enumerated offenses. TEX. CODE CRIM. PROC. ANN. art. 38.072, §§ 1, 2(a)(1)(A), (a)(1)(B)(ii), (a)(2). Indecency with a child by contact is one of the enumerated offenses listed in article 38.072. *Id.* at 38.072, § 1(1).

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The outcry witness must be the first person who is eighteen years or older "to whom the child makes a statement that in some discernible manner describes the alleged

8

offense" and provides more than "a general allusion that something in the area of child abuse was going on." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Chapman*, 150 S.W.3d at 812.

## B. Pertinent Facts

In the trial court, when the State asked Pape-Sims to repeat what A.B. told her, Kiolbassa objected on the basis of hearsay because Pape-Sims was not the proper outcry witness pursuant to article 38.072 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. § 38.072. The trial court held a hearing on Kiolbassa's objection outside the presence of the jury. Pape-Sims testified outside the presence of the jury that A.B. said she had previously told her mother what had occurred, and A.B.'s mother cried. Pape-Sims also stated that A.B. said she told E.B., and E.B. told her not to say anything. The State asked Pape-Sims if she was the first person who A.B. told about the abuse, and Pape-Sims replied, "Yes, I believe so."

Kiolbassa argued that Pape-Sims was not the proper outcry witness because A.B. told her that prior to telling Pape-Sims, she informed E.B. about the incident. The State then resumed its direct examination of Pape-Sims. However, when the State asked Pape-Sims to tell the jury what A.B. told her about the incident, the trial court sustained Kiolbassa's hearsay objections. So, Pape-Sims did not testify at this time as to what A.B. told her about the incident.

After Pape-Sims's testimony, E.B. testified. E.B. claimed that A.B. did not tell him what had occurred. He said that she never mentioned anything about the incident to him at the time that it occurred on June 25, 2018. According to E.B., he did not learn of the

9

sexual abuse allegation until July 18, 2018, when "the detective showed up at the door while my kids were at school . . . [and the detective] said that my daughter went to the counselor and had claimed that [Kiolbassa] had touched her." The State asked, "So you were not the first person to hear about this?" E.B. replied, "No." E.B. also said, "No" when the State asked, "Was your wife told?" The State asked: "Did [your wife] find out the same time you found out?" E.B. replied, "Yes." Then he responded, "Yeah" to the State's question: "In the same way?" According to E.B., once he found out about the incident, he "confronted [A.B.] and asked her why she didn't tell [him] or her mother, and she was afraid that I would be angry with her." E.B. testified that he "stayed away" from the subject because the detective advised him that "could be considered coaching."

On cross-examination, Kiolbassa's trial counsel asked, "Now, it's not exactly true what you said a while ago, sir, that you had not heard about it until you heard about it from the school. Your daughter told you . . . that she felt she had been touched . . . ." E.B. responded, "No, she didn't." Kiolbassa pressed E.B. regarding whether he had called Kiolbassa after the incident occurred on June 25. E.B. replied that he had and acknowledged that he trusted Kiolbassa at that point because "I didn't know anything about it." E.B. explained:

> I didn't know [about A.B.'s outcry] until a month later about . . . anything [that] had happened, and [Kiolbassa] had been at my house multiple times in between. . . . June 25th and July 18th he was at my house multiple times . . . I did not find out until [the detective] came and knocked on my door at 11:00 in the morning."

On redirect examination, E.B. reiterated that he maintained a friendship with Kiolbassa after June 25, 2018, until July 18, 2018, but he ended the friendship when the detective

10

informed him of A.B.'s outcry to Pape-Sims.

After hearing E.B.'s testimony, the trial court stated, "The Court finds that [Pape-Sims] qualifies as the outcry witness under 38.072." The State then recalled Pape-Sims, and the trial court permitted her to testify as to the details of A.B.'s outcry.

## C. Discussion

The trial court heard conflicting evidence regarding who was the first person eighteen years or older to whom A.B. made a statement that in some discernible manner described the alleged offense. *See Garcia*, 792 S.W.2d at 92. Pape-Sims claimed that she was the first person whom A.B. told, and Pape-Sims also stated that A.B. said she told E.B. about the incident prior to telling her. E.B. consistently denied that he heard about the incident from A.B. and instead insisted he and his wife (A.B.'s mother) learned that A.B. claimed Kiolbassa sexually abused her from a detective on July 18, 2018. Moreover, E.B. testified that although he discussed the incident with A.B., he "stayed away" from the topic because he did not want allegations of coaching to occur. E.B. stated that he asked A.B. why she did not tell him or her mother about the incident and that she told him she was scared.

The evidence presented to the trial court supports the trial court's finding that E.B. and his wife were not the first persons over eighteen that A.B. told Kiolbassa committed the offense. *See Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000) ("Determinations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion . . . ."). The evidence also supports the trial

11

court's finding that Pape-Sims was therefore the proper outcry witness. Moreover, Pape-Sims did not testify about what A.B. supposedly told her parents; thus, there is nothing in the record supporting a conclusion that A.B. provided any details of the alleged offense to E.B. or her mother prior to A.B.'s outcry to Pape-Sims. *See id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Chapman*, 150 S.W.3d at 812. Accordingly, we cannot conclude that the trial court clearly abused its discretion in determining that Pape-Sims was the proper outcry witness. We overrule Kiolbassa's second issue.

## IV. ADMISSION OF TESTIMONY

By his third issue, Kiolbassa contends that the trial court improperly allowed the State's expert witness, Sonia Eddleman, to opine "concerning areas outside her field of expertise, such as the child psychology behind delayed outcries in sexual abuse cases." Specifically, Kiolbassa argues that the trial court should have excluded Eddleman's testimony because she was not qualified to testify as an expert pursuant to Rule 702 and because her testimony constituted improper bolstering. *See* TEX. R. EVID. 702. The State responds that Kiolbassa failed to preserve this issue for our review by failing to object on the basis that the Eddleman was not qualified to testify as an expert witness or on the basis that her testimony constituted improper bolstering.

We agree with the State. At trial, when the State asked Eddleman to explain why a child would make a delayed outcry, Kiolbassa objected as follows: "Your Honor, I would object to this line of questioning because she doesn't know anything about this child, and didn't interview this child. Whatever she says would attribute to this child would be nothing more than speculation."

12

Kiolbassa did not object to Eddleman's qualification as an expert witness pursuant to Rule 702. The "three requirements of expert testimony are commonly referred to as (1) qualification, (2) reliability, and (3) relevance," which "raise distinct questions and issues, and an objection based on one of these requirements does not preserve error as to another." *Shaw v. State*, 329 S.W.3d 645, 655 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Turner v. State*, 252 S.W.3d 571, 584 n.5 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd)). "Similarly, if a party objects to expert testimony without identifying one or more of these issues, no error is preserved for our review." *Id.* (citing *Gregory v. State*, 56 S.W.3d 164, 182 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd)); *see* TEX. R. APP. P. 33.1. Therefore, because Kiolbassa objected on the basis that Eddleman's testimony would be speculation and did not object based on Rule 702, he did not preserve this argument for our review. *See Shaw*, 329 S.W.3d at 655.

In addition, Kiolbassa did not object to Eddleman's testimony based on bolstering.[2] *See* TEX. R. APP. P. 33.1. Instead, Kiolbassa only objected to Eddleman's testimony based on speculation. Thus, his objection at trial does not comport with his argument on appeal. Therefore, we conclude that this issue is not preserved for our review. *See Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.—Corpus Christi–Edinburg 2008, pet. ref'd) (concluding that bolstering complaint was waived on appeal because appellant's objections at trial did not comport with bolstering argument on appeal); *see also Darcy v.*

---

[2] *See Cohn v. State*, 849 S.W.2d 817, 819–20 (Tex. Crim. App. 1993) ("[B]olstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party.") (internal quotation marks omitted); *see also Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009) ("The law of 'bolstering' existed before . . . Rules of Evidence were adopted," but that term "failed to survive the adoption of the Rules, [and is] slowly dying as an objection on its face").

*State*, 488 S.W.3d 325, 327 (Tex. Crim. App. 2016) (noting that preservation of error is systemic requirement on appeal); *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (explaining that we should not address the merits of an issue that has not been preserved for appeal). We overrule Kiolbassa's third issue.

## V.    CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
18th day of November, 2021.

14